```
 1               IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                           AT BECKLEY

 3                    TRANSCRIPT OF PROCEEDINGS

 4    ----------------------------x
                                  :
 5    UNITED STATES OF AMERICA,    :        CRIMINAL ACTION
                                  :        NO. 5:11-CR-00090-20
 6    vs.                          :
                                  :
 7    SHAWN A. ANDERSON,           :        June 1, 2011
                                  :
 8              Defendant.         :
                                  :
 9    ----------------------------x

10                         PLEA HEARING

11           BEFORE THE HONORABLE IRENE C. BERGER
                 UNITED STATES DISTRICT JUDGE
12

13    APPEARANCES:

14    For the United States:       MR. MILLER A. BUSHONG, III
                                   Assistant U.S. Attorney
15                                 110 Heber Street, Room 261
                                   Beckley, WV  25801
16
      For the Defendant:           MR. KEVIN D. MILLS
17                                 Kevin D. Mills & Associates
                                   1800 West King Street
18                                 Martinsburg, WV  25401

19

20

21

22

23    Court Reporter:              Lisa A. Cook, RPR-RMR-CRR-FCRR

24    Proceedings recorded by mechanical stenography; transcript
      produced by computer.
25
```

1                     P R O C E E D I N G S

2          THE CLERK:   The matter before the Court is the

3    *United States* vs. *Shawn Anderson*, Case Number 5:11-CR-90-20,

4    scheduled for plea hearing.

5          THE COURT:   Good morning.

6       Counsel, would you note your appearances on the record,

7    please.

8          MR. BUSHONG:   Good morning, Your Honor.   Miller

9    Bushong for the United States.

10         MR. MILLS:   Kevin D. Mills, Your Honor, on behalf

11   of the defendant.   Good morning.

12         THE COURT:   Are we prepared to go forward in this

13   case, counsel?

14         MR. BUSHONG:   United States is ready, Your Honor.

15         MR. MILLS:   Ready on behalf of the defendant for

16   the entry of a plea, Your Honor.

17         THE COURT:   Madam Clerk, if you would please

18   administer the oath to Mr. Anderson.

19      (Defendant sworn)

20         THE COURT:   Mr. Mills, it's my understanding that

21   your client desires to enter a plea of guilty to Count

22   Sixteen.   Is that correct?

23         MR. MILLS:   Yes, Your Honor.

24         THE COURT:   Mr. Anderson, do you understand that

25   you're now under oath and that if you answer any of my

1    questions falsely, your answers can be used against you

2    later in a subsequent prosecution for perjury or giving of a

3    false statement?

4                THE DEFENDANT:  Yes.

5                THE COURT:  During the course of this hearing I'll

6    have a number of questions to ask you.  If at any time you

7    do not understand something that I say, I want you to ask me

8    to explain it or repeat it.  And if at any time you need to

9    confer privately with your attorney, Mr. Mills, let me know

10   and I will accommodate you on that.

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  State your full name, please.

13               THE DEFENDANT:  Shawn A. Anderson.

14               THE COURT:  And how old are you, Mr. Anderson?

15               THE DEFENDANT:  Thirty-seven years old.

16               THE COURT:  How much education have you received?

17               THE DEFENDANT:  I graduated from the High School

18   of Commerce in Massachusetts and have had maybe three

19   semesters at the College of West Virginia, Ohio State

20   University.

21               THE COURT:  Can you read and write?

22               THE DEFENDANT:  Yes, I can.

23               THE COURT:  Have you recently been under the care

24   of a doctor, psychiatrist, or other medical professional for

25   any serious physical or emotional illness?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Are you currently taking any type of

3     medication, controlled substance, or alcohol that might

4     interfere with your ability to understand the proceedings

5     here this morning?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Mr. Mills, during the course of the

8     time that you have represented Mr. Anderson, have you had

9     any reason to question his competence?

10         MR. MILLS:  No, Your Honor, I have not.

11         THE COURT:  I find, Mr. Anderson, that you are

12    competent and capable of entering an informed plea.

13      Do you believe that you've had adequate time to discuss

14    your case with Mr. Mills?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Has he been able to advise you about

17    how to best proceed in this matter?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And are you completely satisfied, Mr.

20    Anderson, with the legal representation you have received

21    from Mr. Mills?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Mr. Mills, have you had adequate time

24    to discover the Government's case?

25         MR. MILLS:  Yes, Your Honor.

1    THE COURT:  Have you also had adequate time to

2  give consideration to possible defenses to this claim for

3  your client?

4    MR. MILLS:  Yes, Your Honor.  We've explored all

5  avenues of the offense that I think are available given the

6  discovery we've had and an opportunity to review it and I'm

7  satisfied that the decision the defendant has made is in his

8  best interest.

9    THE COURT:  Have you also had adequate time to

10  give consideration to possible sentences?

11    MR. MILLS:  Yes, Your Honor.

12    THE COURT:  During the time that you have

13  represented Mr. Anderson, has he been fully cooperative with

14  you?

15    MR. MILLS:  He has been fully cooperative and

16  always on time for his appointments at my office and

17  fulfilled all of his obligations when he promised to be

18  someplace.

19    THE COURT:  You have, I take it, discussed the

20  discovery, the potential sentences, as well as the potential

21  defenses with your client.  Is that also correct?

22    MR. MILLS:  That's correct, Your Honor.  There's

23  over a couple thousand pages of discovery.  So, it involves

24  several days of meetings at my office over a course of a few

25  weeks.  And even prior to the arrival of discovery, we were

1  exploring defenses and possible ways to, to handle the case.

2  And I believe that he understood all of his options and we

3  explored each one individually and carefully.

4          THE COURT:  I take it from your comment that it is

5  your belief that you have been very thorough with your

6  client in relation to the discovery, the potential

7  sentences, and the potential defenses.  Is that correct,

8  counsel?

9          MR. MILLS:  Yes, Your Honor.

10          THE COURT:  There is a proposed plea agreement in

11  this matter.  Is that true?

12          MR. MILLS:  There is, Your Honor.

13          THE COURT:  You-all can have a seat there for a

14  moment.

15      Mr. Bushong, if you would please summarize the terms of

16  the agreement on the record.

17          MR. BUSHONG:  Your Honor, the proposed plea

18  agreement is a seven-page document with one attachment, Plea

19  Agreement Exhibit A, which is the Stipulation of Facts.

20  It's in letter form.  It's dated April 25th, 2011.  It's

21  addressed to Kevin D. Mills, counsel for the defendant.  And

22  I'll summarize each paragraph.

23      Paragraph 1 is the pending charges paragraph.  It sets

24  out that the defendant is charged in two counts of a

25  20-count indictment.  In Count One he's charged with

1    conspiracy to distribute a thousand kilograms of marijuana

2    for remuneration.

3         In Count Sixteen he's charged with distribution of a

4    quantity of marijuana for remuneration.  Count Sixteen,

5    which is the offense of conviction, is in violation of 21,

6    U.S.C., Section 841(a)(1).

7         Paragraph 2 is the resolution of charges paragraph.

8    The United States has agreed not to file an 851 information

9    if applicable in his case.  The defendant will plead guilty

10   to Count Sixteen.  At sentencing the United States will move

11   the Court to dismiss Count One as to this defendant.

12        Paragraph 3 is the maximum potential penalty.  Under

13   the statute, the defendant faces a term of imprisonment of

14   five years; a $250,000 fine; a three-year term of supervised

15   release; $100 special assessment; denial of federal benefits

16   for up to five years; and restitution.

17        Paragraph 4 is the special assessment paragraph.  It

18   states that the defendant at this time does not have the

19   money to pay the special assessment but agrees to pay it

20   through prison earnings if he is incarcerated.

21        It's my understanding, Your Honor, that the defendant

22   may pay that today or before he is sentenced.

23             THE COURT:  All right.

24             MR. BUSHONG:  So that the substance of Paragraph 4

25   may be moot.

1     Paragraph 5, payment of monetary penalties, states that

2     the defendant agrees to pay any monetary penalty

3     immediately.  The defendant will not object to the District

4     Court imposing a schedule of payments to satisfy any

5     monetary penalty.

6     Paragraph 6 is a standard cooperation paragraph.

7     Paragraph 7 is a standard use immunity paragraph.

8     Paragraph 8 is the limitation on that immunity which

9     allows the United States to use information which is learned

10    independently from the defendant in either charging him with

11    additional crimes or in calculating his guidelines.

12    Paragraph 9 is the Stipulation of Facts and waiver of

13    Federal Rule of Evidence 410 paragraph.  It states that

14    there is a proposed Stipulation of Facts in this case that's

15    attached to the plea agreement as Exhibit A.  The paragraph

16    goes on to set out that that is not binding on the Court.

17    It's not binding on the probation office.  The Court does

18    not have to accept it.

19    The paragraph goes on to set out certain circumstances

20    by which the United States might use that Stipulation of

21    Facts if this case were to somehow end up at trial.

22    Paragraph 10 is waiver of appeal and collateral attack.

23    The defendant, pursuant to this plea agreement, essentially

24    waives his right to appeal unless it is above the statutory

25    maximum.  The defendant does reserve the right to

1   collaterally challenge the conviction or sentence based on a

2   claim of ineffective assistance of counsel.

3       Paragraph 11 is a waiver of FOIA and privacy rights.

4   The defendant waives both pursuant to this agreement as it

5   relates to this case.

6       Paragraph 12 is the final disposition paragraph.  It

7   states that sentencing is within the sole discretion of the

8   Court.

9       Paragraph 13 is the voiding of agreement paragraph.  It

10  states that if either party violates the terms of the

11  agreement, the other party has the right to void the

12  agreement.  And if the Court refuses to accept the

13  agreement, it shall be void.

14      Paragraph 14 is the entirety of agreement paragraph.

15  It states that this is the entire agreement between the

16  parties.  There are no side agreements or understandings

17  outside the four corners of the document.

18      Page 7 has an acknowledgment paragraph at the bottom.

19  It is also signed and dated, Page 7, by the defendant and

20  his counsel.  The last page is also signed by myself.  And

21  the parties have signed and dated the Stipulation of Facts.

22          THE COURT:  All right.  Thank you.

23      Mr. Bushong has stated it as he summarized Paragraph

24  14.  Mr. Mills, I will ask you, first of all, if this is an

25  accurate summary of the agreement that's been reached

1   between your client and the Government.

2            MR. MILLS:  It is an accurate summary, Your Honor.

3   And with the requisite as to Paragraph 4, Mr. Anderson does

4   intend to pay the special assessment.

5            THE COURT:  And is this, in fact, the entirety of

6   the agreement that's been reached between your client and

7   the Government?

8            MR. MILLS:  It is the entire agreement.

9            THE COURT:  Mr. Anderson, do you understand what

10  this agreement does?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Do you understand what it requires of

13  you?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Do you have any questions at all about

16  the plea agreement?

17           THE DEFENDANT:  No, Your Honor.

18           THE COURT:  Were each of the paragraphs of the

19  agreement discussed with you and explained to you prior to

20  your reaching an agreement with the Government?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  And are those, in fact, your initials

23  on the first six pages of the plea agreement?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And is that your signature, Mr.

1    Anderson, on the last page of the agreement and on the

2    Stipulation of Facts which has been labeled as Exhibit A?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Do you understand that you have

5    entered into a Stipulation of Facts, Mr. Anderson, that can

6    be used as evidence against you if you were to breach the

7    agreement and proceed to trial?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you also understand that you have

10   agreed to waive or give up your right under Rule 410 of the

11   Federal Rules of Evidence to challenge the use of that

12   Stipulation of Facts?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Do you want me to accept the plea

15   agreement?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  I will defer acceptance of the

18   agreement, Mr. Anderson, until I've had the opportunity to

19   review the pre-sentence investigation report in this case.

20   However, I am going to order that the original of the

21   agreement be filed and made a part of the court record here

22   this morning.

23        Have you received a copy of the indictment that was

24   filed against you?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And have you had the opportunity to

2    read that indictment?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Would you like for me to read it to

5    you here this morning or will you waive its reading?

6          THE DEFENDANT:  I'll waive it, Your Honor.

7          THE COURT:  How do you plead, Mr. Anderson, to the

8    charge contained in Count Sixteen of the plea agreement?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  Before I accept your plea, I want to

11   make sure that there is a sufficient factual basis to

12   support your plea of guilty.  I also want to ensure that you

13   understand the nature of the charge and the consequences of

14   pleading guilty.  I want to make sure that you understand

15   the constitutional and other legal rights that you will be

16   waiving and giving up by pleading guilty.  And I also want

17   to make sure that your plea is voluntary.

18       I'll go over the charge with you.

19       You are charged in Count Sixteen with violating 21,

20   U.S.C., Section 841(a)(1) which states, in pertinent part,

21   it shall be unlawful for any person knowingly or

22   intentionally to distribute a controlled substance; in this

23   case, marijuana.

24       If the Government had to go to trial in this case, Mr.

25   Anderson, it would have to prove the following elements

1    against you beyond a reasonable doubt:

2         First, that you knowingly and intentionally distributed

3    marijuana; and at the time you distributed it, you knew that

4    the substance was, in fact, a controlled substance.

5         I will further state to you that by law marijuana is a

6    controlled substance, and that the term "to distribute" as

7    used in that statutory language that I just gave to you

8    means to deliver or transfer possession or control of

9    something from one person to another.

10        I will further advise you that by law, to distribute

11   includes the sale of something by one person to another.

12        An act is done knowingly if it is done voluntarily and

13   intentionally and not because of mistake or accident or some

14   other innocent reason.

15        An act is done intentionally as used in these

16   definitions and statutory language if it's done knowing that

17   the act is one that the law forbids and purposefully

18   intending to violate the law.

19        Now that I have gone over the statutory language with

20   you and those definitions, do you consider yourself to be

21   guilty of violating 21, U.S.C., Section 841(a)(1)?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Tell me in your own words what it is

24   you did, Mr. Anderson, that makes you guilty of violating

25   that provision.

1          THE DEFENDANT:  On or around the time of

2    January 27th I did distribute five pounds of marijuana to

3    the person that they said I did.

4          THE COURT:  All right.  Let me back you up.  You

5    say January 27th, on or around that date, --

6          THE DEFENDANT:  Yeah.

7          THE COURT:  -- you distributed -- did I understand

8    you to say five pounds of marijuana?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  To whom?

11          THE DEFENDANT:  To Phillip Thompson.

12          THE COURT:  And where did this take place?

13          THE DEFENDANT:  At Phillip Thompson's house.

14          THE COURT:  And where is that?

15          THE DEFENDANT:  It's in Beckley on -- I don't know

16    the exact name of the street.  I just know where it is.

17          THE COURT:  All right.  And I take it when you

18    distributed the five pounds of marijuana to him you knew it

19    was, in fact, a controlled substance and that you were

20    breaking the law?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  What did you receive in exchange for

23    that?

24          THE DEFENDANT:  I was to pick up money at a later

25    date.

1          THE COURT:  How much money?

2          THE DEFENDANT:  I would charge fifteen to sixteen

3     hundred a pound.

4          THE COURT:  All right.  How had this been

5     arranged, Mr. Anderson?

6          THE DEFENDANT:  I talked to him one day maybe a

7     couple months prior and we just started from there.

8          THE COURT:  And --

9          THE DEFENDANT:  He said he needed it.  I

10    basically --

11         THE COURT:  And on the date that you went to his

12    home and distributed the five pounds of marijuana, was he

13    expecting you?  Had there been arrangements made for that

14    deal at that particular time?

15         THE DEFENDANT:  I would just show up, no calls, no

16    nothing, just show up and do it like that.

17         THE COURT:  All right.  And how much later was it

18    that you were supposed to receive the money for the

19    marijuana that you distributed on that date?

20         THE DEFENDANT:  I would do it the same way.  I

21    would just stop by periodically, and whatever he had at that

22    time I would collect.

23         THE COURT:  All right.  And you say that this

24    happened at his residence in Beckley here within the

25    Southern District of West Virginia?  Is that correct?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  You-all can have a seat there

3   momentarily.

4      Mr. Bushong, if you would, please, make a proffer as to

5   what the Government's evidence would be if the matter

6   proceeded to trial.

7        MR. BUSHONG:  Your Honor, if this case were to go

8   to trial, the United States would present evidence that on

9   or about January 27th, 2011, the defendant, near Beckley,

10  West Virginia, in the Southern District of West Virginia,

11  distributed approximately five pounds of marijuana to a

12  person known to the grand jury and to the defendant.  That

13  person has been named in court.  The defendant is right.  It

14  was Phillip Thompson.

15     That money was -- or that marijuana was given by the

16  defendant to Phillip Thompson on the front.  It was an

17  agreed upon price between the two.  And the defendant is

18  right that the collection of that agreed amount would occur

19  from time to time.

20     There was a search warrant executed by police officers

21  at Phillip Thompson's house on January 27th, 2011.  There

22  was a quantity of marijuana seized.

23     If this case were to go to trial, the United States

24  would call as witnesses, at a minimum, Phillip Thompson, the

25  case agent, the chemist who tested the marijuana that was

1    seized from Phillip Thompson's house.

2         As exhibits we would enter the -- we would offer the

3    seized marijuana from Phillip Thompson's house.  We would

4    also introduce 404(b) evidence as it relates to Count

5    Sixteen, but substantive evidence -- the same evidence being

6    substantive evidence as it relates to Count One,

7    particularly exhibits that were seized on January 21st,

8    about a week prior to this date, 2011.

9         The United States would ask the Court to take judicial

10   notice that marijuana is a Schedule I controlled substance,

11   and that Beckley, West Virginia, is within the Southern

12   District of West Virginia.

13             THE COURT:  All right.  Thank you.

14        Mr. Anderson, is what Mr. Bushong just stated

15   substantially correct?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And, Mr. Mills, are you satisfied if

18   the matter proceeded to trial that there would be no

19   meritorious legal defense to this claim?

20             MR. MILLS:  Your Honor, I believe that, that the

21   facts that the, the defendant has admitted to and the

22   Government has summarized would, would be sufficient to

23   convince the jury beyond a reasonable doubt.

24             THE COURT:  And are you satisfied that there is no

25   meritorious legal defense to the claim?

1        MR. MILLS:  Yes, Your Honor.

2        THE COURT:  Are you also satisfied that

3   Mr. Anderson's constitutional and other legal rights have

4   been fully observed?

5        MR. MILLS:  Yes, Your Honor.  We've explored all

6   the search and seizure issues, the statement issues,

7   extensively explored the grand jury testimony, his rights

8   regarding witnesses that may testify against him, and I

9   believe all of his constitutional rights have been

10  vindicated to this point.

11       THE COURT:  Do you concur, Mr. Mills, in your

12  client's now stated intention to plead guilty?

13       MR. MILLS:  Yes, I do, Your Honor.

14       THE COURT:  Mr. Anderson, I find that there is a

15  sufficient factual basis to support your plea of guilty.

16     Do you understand that you are pleading guilty to a

17  felony offense and that if I accept your plea, you will be

18  adjudged guilty of a felony?

19       THE DEFENDANT:  Yes, Your Honor.

20       THE COURT:  Do you also understand that such a

21  judgment can deprive you of valuable civil rights such as

22  your right to vote, your right to hold public office, your

23  right to sit as a juror, and your right to possess a

24  firearm?

25       THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Do you also understand that if you

2   plead guilty and I accept your plea that you expose yourself

3   to a maximum period of incarceration of five years?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  Do you further understand, Mr.

6   Anderson, that the Court could fine you up to $250,000, or

7   twice the gross pecuniary gain or loss resulting from your

8   conduct, whichever is greater?

9    THE DEFENDANT:  Yes, Your Honor.

10    THE COURT:  Additionally, do you understand that

11   you would be subject to a period of supervised release of up

12   to three years?

13    THE DEFENDANT:  Yes, Your Honor.

14    THE COURT:  Do you understand, Mr. Anderson, that

15   supervised release means after release from prison you would

16   be supervised by the probation office under terms and

17   conditions set by the Court?

18    THE DEFENDANT:  Yes, Your Honor.

19    THE COURT:  Do you also understand, importantly,

20   that if you violated any of those terms and conditions of

21   supervised release, the Court could revoke your period of

22   supervised release and require you to spend the entire

23   supervised release period in prison?

24    THE DEFENDANT:  Yes, Your Honor.

25    THE COURT:  Further, do you understand that you

1    will be assessed a special assessment of $100 for having

2    been convicted of a felony offense?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And, additionally, do you understand

5    that the Court could deny you certain federal benefits for a

6    period up to five years --

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  -- and require you to make restitution

9    to any identifiable crime victims if there are any?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Have you discussed with Mr. Mills the

12   application of the United States Sentencing Guidelines to

13   your case?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  I'll talk to you about that briefly

16   here this morning.

17        Do you understand that I will not be able to determine

18   the applicable advisory guideline range in your case until

19   after the probation department prepares a pre-sentence

20   report and until after both you and the Government have had

21   the opportunity to challenge the facts contained in that

22   report?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Counsel, based on my review of the

25   Pre-Trial Services Report, it would indicate that this

1  defendant has one prior felony conviction and would,

2  therefore, not be someone to whom the career offender

3  enhancement would apply.  Do you lawyers agree that that is

4  the case?

5         MR. MILLS:  That is correct.  My understanding,

6  Your Honor, through my research and my investigation, I have

7  advised the defendant that the career offender would not

8  apply.

9         MR. BUSHONG:  I, I don't know, Your Honor.

10         THE COURT:  All right.  Let me do this.  And for

11  you lawyers who are here on a regular basis, this will be my

12  pattern of going forward.

13     My review of the Pre-Trial Services Report indicates

14  that you have one prior felony conviction for a drug

15  offense.  If that is the only one, you will not be subject

16  to career offender treatment under the Sentencing

17  Guidelines.

18         However, because that information in the Pre-Trial

19  Services Report is often preliminary, I'm going to advise

20  you of it before you enter your plea so that you know all

21  information relative to making up your mind about deciding

22  on a plea of guilty.

23     Do you understand that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Mr. Anderson, did you discuss with

1   Mr. Mills the career offender provision as that term is

2   defined and used in the United States Sentencing Guidelines?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And has he advised you that if you

5   have certain felony convictions, that being two felony

6   convictions, two of which are drug offenses or a combination

7   of a drug offense and a violent offense, that with the

8   conviction that you will gain if this plea is accepted that

9   you would qualify for career offender enhancement under

10  Section 4B1.1 of the United States Sentencing Guidelines?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And do you understand that although

13  the Government has agreed not to file an information under

14  21, U.S.C., Section 851 which would allow for increased

15  statutory penalties, that that agreement does not in any way

16  affect whether career offender enhancement would be applied

17  to your case under the Sentencing Guidelines?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Does that make sense to you?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  Do you understand that the

22  sentence that I impose may be different from any estimate

23  that Mr. Mills may have given to you?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Do you also understand, Mr. Anderson,

1   that I am required to calculate that advisory guideline

2   range that I talked to you about briefly, consider that

3   range, consider departures under the United States

4   Sentencing Guidelines, and also consider the sentencing

5   factors which are set forth in 18, U.S.C., Section 3553(a)

6   in determining your appropriate sentence?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you also understand that I'm not

9   bound by that guideline range and that I could impose a

10  sentence that's either less severe or more severe than that

11  called for by the guideline range?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you further understand that parole

14  has been abolished and that if you are sentenced to a term

15  of imprisonment, Mr. Anderson, you will not be released on

16  parole?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  And do you understand that even if you

19  do not like my sentence, you still would be bound by your

20  plea of guilty and would not be permitted to withdraw it?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Do you understand that you have a

23  right to testify at your sentencing hearing if you choose?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Do you also understand that you may

1   have a right to appeal your conviction if you believe that

2   your guilty plea was unlawful or involuntary or that there

3   was some other fundamental defect in the proceeding that was

4   not waived either by your plea of guilty or by your plea

5   agreement?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Do you understand that you or the

8   Government may have a right to appeal any sentence that I

9   impose?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  But, importantly, do you understand

12   that you have agreed to give up your right to appeal your

13   sentence or the manner in which the Court determined your

14   sentence even if you believe that I've miscalculated the

15   applicable advisory guideline range?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  And do you understand that you have

18   agreed to give up your right to appeal the term of

19   imprisonment or fine on any ground whatsoever unless that

20   sentence or fine exceeds the statutory maximum?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Again, does that make sense to you,

23   Mr. Anderson?

24           THE DEFENDANT:  Yes, it does.

25           THE COURT:  Do you further understand that you

1   waive your right to challenge your guilty plea, conviction,

2   and sentence by collateral attack, including a motion

3   brought pursuant to 28, U.S.C., Section 2255 unless that

4   collateral attack is based on a claim of ineffective

5   assistance of counsel?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  And do you further understand that

8   you've waived all rights to request or receive from any

9   department or agency of the United States any records

10  pertaining to the investigation or prosecution of your case

11  under the Freedom of Information Act or the Privacy Act of

12  1974?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Have you discussed the waiver of these

15  appellate rights with your attorney, Mr. Mills?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And having done so, Mr. Anderson, is

18  it still your desire to waive those rights?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you understand that with very few

21  exceptions any notice of appeal must be in writing and filed

22  within 14 days of judgment being entered in your case?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Any questions about anything I've said

25  to you thus far?

1              THE DEFENDANT:  No, Your Honor.

2              THE COURT:  I find that you understand the nature

3    of the charge and the consequences of pleading guilty.

4        Do you understand that although you came here today

5    with the intention of pleading guilty, you have the right to

6    plead not guilty?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Do you also understand that by

9    pleading guilty you're giving up your right to a public and

10   speedy trial by jury?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And do you understand when you plead

13   guilty, you give up your right to force the Government to

14   come forward with evidence or witnesses against you?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Anderson, do you understand that

17   had you desired to go to trial, you would have been presumed

18   innocent until or unless the Government came forward with

19   sufficient evidence to convince both the Judge and the jury

20   of your guilt beyond a reasonable doubt?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And do you further understand when you

23   admit your guilt as you are doing here this morning, you

24   essentially relieve the Government of its burden of having

25   to prove your guilt beyond a reasonable doubt?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Do you understand that you would have

3    had the right to the assistance of your attorney, Mr. Mills,

4    at your trial?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  And do you understand that you and he

7    would have had the right and opportunity to confront and

8    cross-examine your accusers or to cross-examine each and

9    every witness presented by the Government and tested the

10   truth of what those witnesses stated during your trial?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And do you understand that by pleading

13   guilty, you're giving up that right, Mr. Anderson?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you understand that had you desired

16   to go to trial and wanted to call witnesses, you would have

17   been entitled to the services of the United States Marshal

18   to bring witnesses to trial under subpoena?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And by pleading guilty, of course, you

21   give up your right to call any and all witnesses except

22   during your sentencing hearing.  Do you understand that

23   also?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you understand, Mr. Anderson, that

1   you would have had the right to move to suppress or keep

2   away from the jury's hearing and consideration any evidence

3   of any nature that had been illegally or unlawfully

4   obtained?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Do you further understand that had you

7   desired to go to trial that you would have had the right to

8   testify on your own behalf?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Importantly, do you understand that no

11  one could have forced or compelled you to testify?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Had you desired to testify, do you

14  understand that I would have instructed the jury that they

15  had to give the same careful consideration to your testimony

16  that they gave to the testimony of all of the other

17  witnesses in the case?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you also understand that,

20  alternatively, you would have had the right not to

21  testify -- or the right to remain silent, not to testify,

22  and not to present any witnesses if that was your choice?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Had you desired to remain silent,

25  Mr. Anderson, I would have instructed the jury that you had

1    a constitutional right to remain silent and that the jury

2    could not convict you because you chose to exercise that

3    right, but convict you only upon sufficient evidence

4    submitted by the Government to convince them of your guilt

5    beyond a reasonable doubt.  Do you understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Any questions about any of those

8    rights?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  I find that you understand the

11   constitutional and other legal rights you're giving up by

12   pleading guilty.

13       Knowing everything that I've said to you thus far, is

14   it still your desire to plead guilty?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Anderson, has anyone tried to

17   force, coerce, intimidate, put pressure on you, or talk you

18   into pleading guilty against your will?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  Other than this plea agreement, has

21   anyone made you any promises or told you anything different

22   than what I've said to you this morning to induce you to

23   plead guilty?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Are you pleading freely and

1    voluntarily and of your own free will?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Is pleading guilty your own idea?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Have you understood everything that's

6    gone on in the proceedings here this morning?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  I find, Mr. Anderson, that your plea

9    is voluntary.

10        Are you having any second thoughts, any hesitation, or

11   questions about pleading guilty?

12             THE DEFENDANT:  No, Your Honor.

13             THE COURT:  If not, I'll ask you to sign the

14   written plea at this time.

15        Mr. Mills, I would ask that you endorse it as well.

16        (Pause)

17             THE COURT:  Thank you.

18        The record should reflect that the defendant has signed

19   the written plea of guilty.  It has been signed by his

20   attorney as well and it has been tendered to the clerk for

21   filing.

22        In the case of *United States* vs. *Shawn Anderson*, I

23   find, Mr. Anderson, that you are fully competent and capable

24   of entering an informed plea.

25        I further find that there is a sufficient factual basis

1    to support your plea of guilty and that you understand the

2    nature of the charge and the consequences of pleading

3    guilty.

4         I find that you understand the constitutional and other

5    legal rights that you are going to be waiving and giving up

6    by pleading guilty.  And I find that your plea is voluntary.

7         Although I have deferred acceptance of the plea

8    agreement until I have the opportunity to review your

9    pre-sentence report, I do, in fact, accept your plea of

10   guilty.  I adjudge that you are guilty.  You now stand

11   convicted of violating 21, U.S.C., Section 841(a)(1).

12        I'll direct the probation office to conduct a

13   pre-sentence investigation of Mr. Anderson, prepare a draft

14   report and disclose its contents to the Government and to

15   the defendant no later than August the 17th.

16        I'll further direct, counsel, that you make any

17   objections to that draft report no later than August 31st.

18        The final pre-sentence report, then, will be due to the

19   Court no later than September 16th.  And both parties should

20   file your sentencing memoranda no later than October 19th.

21        I'll schedule the matter for sentencing on October 26th

22   at 10:00 a.m.

23        Are there any issues, counsel, with respect to relevant

24   conduct?

25             MR. BUSHONG:  I don't believe there will be, Your

1    Honor.  But if any arise, the United States and Mr. Mills

2    will operate under your, your standing order.

3              THE COURT:  Mr. Mills, are you satisfied to

4    proceed in that manner?

5              MR. MILLS:  Your Honor, I didn't hear the Court's

6    question.  I'm sorry.

7              THE COURT:  I asked whether or not there were

8    anticipated any issues with respect to relevant conduct.

9              MR. MILLS:  Without seeing the pre-sentence

10   report, Your Honor, I can't say.  But I, I wouldn't want to

11   bind myself one way or the other at this point on

12   Mr. Anderson's behalf, but I certainly agree with

13   Mr. Bushong.  And I'll review the Court's standing order - I

14   haven't seen it - to be clear with the Court.

15             THE COURT:  All right.

16        Mr. Bushong, I will expect counsel to work together on

17   that issue and if there are any problems, you'll get the

18   Court a chart and we'll proceed from there.

19             MR. BUSHONG:  Yes, Your Honor.

20             THE COURT:  Mr. Anderson, the Bail Reform Act

21   requires that you, now having been convicted, be detained

22   awaiting sentence unless the Court finds by clear and

23   convincing evidence that you're not likely to flee and not

24   likely to pose a danger to any other person or to the

25   community if released.

1        Counsel, I have received a Pre-Trial Services Report as

2   well as a Release Status Report that contains information

3   relative to the issue of his detention or release.  Are

4   there any objections to my using those documents as evidence

5   in this case?

6            MR. BUSHONG:  No, Your Honor.

7            MR. MILLS:  No, there is not, Your Honor.  I've

8   had an opportunity to review them.  Ms. King provided them

9   to me this morning.

10           THE COURT:  All right.

11           MR. MILLS:  I can also advise the Court of the

12  defendant's continuing efforts and employment, where he's

13  employed, two jobs.

14           THE COURT:  I'll call on you and give you an

15  opportunity to do that, counsel.

16           MR. MILLS:  Thank you.

17           THE COURT:  I will note from my review of those

18  documents -- you can have a seat -- that the defendant has

19  lived here in the Southern District since 1996.  He has a

20  prior record of drug offenses.

21      I will also note that based on my recollection of my

22  review of the pre-sentence report, he had made a statement

23  that he had gained employment with McDonald's.

24      And I will ask the probation office -- because at the

25  time I reviewed that information, it had not been

1    verified -- has it since been verified?

2            PROBATION OFFICER KING:  Your Honor, I'm sorry, I

3    can't answer that question.  Mr. Gibson, Officer Gibson in

4    Charleston has been supervising the defendant.  I could find

5    out and advise the Court later.

6            THE COURT:  All right.  Thank you.  I'd appreciate

7    it.

8            PROBATION OFFICER KING:  Yes, Your Honor.

9            THE COURT:  Mr. Bushong, any position the

10   Government wants to take relative to detention or release?

11           MR. BUSHONG:  Your Honor, the United States is in

12   favor of continued bond.  It's my understanding, and I'll

13   stand corrected, but it's my understanding the defendant has

14   employment and may have an opportunity to even better his

15   opportunities as far as employment goes.  The United States

16   is unaware of any problems while on bond, and I would see no

17   reason why the defendant could not remain on bond.

18           THE COURT:  I will note for the record that the

19   Release Status Report that is dated May 26th, fairly recent,

20   indicates that the defendant has complied with all terms and

21   conditions of his pre-trial release.

22       Mr. Mills, anything that you want to place on the

23   record with respect to release and/or detention?

24           MR. MILLS:  Your Honor, we would ask for continued

25   release.  As the Court has noted, the mandatory detention

1   act does not apply, but the Court has the, the decision to

2   make about whether this defendant has earned the right to

3   continue to stay out now that his guilty plea has been

4   tendered.  We would suggest respectfully to the Court that

5   he, that he be allowed to remain out.

6       I can answer the Court's question regarding his

7   employment verification.  Mr. Gibson, the probation officer

8   from Charleston, has been to his employment at McDonald's

9   and verified it there.  He's been -- Mr., Mr. Anderson has

10  been employed since the day of his arraignment.  Actually, a

11  couple days before when he was released -- he was initially

12  arrested, released, returned for his arraignment voluntarily

13  and had obtained employment at McDonald's at that time.

14      He has since obtained a second job working at

15  Delightfully Yours as a salad prep chef.  So, he works two

16  jobs.  I don't know that Mr. Gibson has visited the second

17  job yet.  But in the -- during those two jobs, he is working

18  seven days a week.

19      He's also enrolled to return to the mining industry and

20  he's enrolled in classes for certification for mine

21  certification.  He was previously certified.  He's made

22  inquiry in the field and has been told by the people that

23  he's been contacting that once he receives his certificate,

24  his mine surface certificate, he will be eligible for

25  employment and likely to become employed in that gainful

1   occupation, not just a job.

2       He -- while he's working these two jobs, he has gone to

3   class in the mornings to obtain his certification back in

4   the mine and get his feet back on the right course.  So, his

5   certification is due to, to be final this coming Friday,

6   Friday after -- I'm sorry, Your Honor -- Friday or Monday

7   after this week.

8       And, so, we would ask for the reasons that, that we've

9   laid on the record and the other ones that the Court has

10  made findings about and the probation officer's

11  recommendation because of his compliance with all of his

12  conditions that he be allowed to remain on bond.

13      He also lives with his aunt who is elderly and in need

14  of his assistance.  He provides medications and transports

15  her from time to time, when given permission, to and from

16  medical visits.  She's recovering and is doing better and is

17  somewhat able to be on her own, but he assists with her

18  care.

19      He also has a young son who he has participated in

20  raising that lives in Beckley and attends, when given

21  permission from the probation officer, athletic events.  He

22  was a wrestling coach for a number of years.

23      So, Mr. Anderson has, has tried to step back into the

24  productive way of living and be a member of this community

25  that the community can be proud of.  We'd ask that the Court

1    give him the opportunity during this time between his plea

2    and sentence to continue with that course.

3              THE COURT:   Thank you.

4         Having listened to the statements of counsel and having

5    given consideration to the information contained in the

6    Pre-Trial Services Report and the Release Status Report as

7    evidence, I find by clear and convincing evidence, Mr.

8    Anderson, that you're not likely to flee and not likely to

9    pose a danger to any other person or to the community.  And,

10   therefore, I am going to order that you continue your

11   release on the bond that you previously executed.

12        Before we leave, I want to advise you that if you

13   knowingly fail to appear before this Court as required now

14   as a condition of your bond on October 26th, 2011, then in

15   addition to any sentence that I impose upon you for your

16   conviction here today, I may impose an additional sentence

17   on you of up to five years.

18        Further, if you commit any offense whatsoever while you

19   are released on bond pending sentence, then in addition to

20   the sentence that I impose as a result of your conviction

21   today, I will be required to impose an additional sentence.

22        If the offense that you commit is a felony offense, I

23   can impose a sentence up to 10 years.  If the offense you

24   commit is a misdemeanor, I can impose a, a sentence of up to

25   one year.

1      In either event, that sentence would run consecutively

2  to, not concurrently with, the sentence I impose as a result

3  of today's conviction.

4      Does that make sense to you?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  All right.

7      Any other matters that we need to address here today,

8  counsel?

9           MR. BUSHONG:  No, Your Honor.

10          MR. MILLS:  Your Honor, the Court, having granted

11  the motion to, to, for release, Mr. Anderson appreciates the

12  Court's confidence.  He was given a home confinement

13  bracelet at the time of his release by the magistrate.  If

14  the Court would like to have him continue with that, he's

15  happy to do that.

16     And I'm only asking the Court to inquire whether or not

17  if the Court believes it's necessary to ensure his, his

18  reporting because of his three different employment

19  opportunities and his travel for his child.  He has a number

20  of different community activities he calls and asks

21  permission for, but it's not always easy to get ahold of

22  the, of the probation officer because of the probation

23  officer's duties.

24     So, sometimes with job changes, schedule changes, it

25  gets a little complicated.  He has shown, I think, a very

1   strong reliability in appearing for court and has complied

2   with all of the probation officer's requests and always been

3   where he said he was going to be.

4           THE COURT:  In finding that he is not likely to

5   flee and not likely to pose a danger to any person or to the

6   community, it was my intention to release him on the bond

7   previously executed under the same terms and conditions.

8       Anything further?

9           MR. MILLS:  No, Your Honor.  Thank you.

10          THE COURT:  You-all have a good day.

11      (Proceedings concluded at 10:50 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          I, Lisa A. Cook, Official Reporter of the United

2     States District Court for the Southern District of West

3     Virginia, do hereby certify that the foregoing is a true and

4     correct transcript, to the best of my ability, from the

5     record of proceedings in the above-entitled matter.

6

7

8          s\Lisa A. Cook                    June 30, 2011

9             Reporter                           Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25